IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KIMBERLY L. MARTIN,**

        **Plaintiff,**

  vs.                          Civil Action 2:14-cv-2731
                                 Judge Marbley
                                 Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance benefits. This matter is now before the Court for consideration of *Plaintiff, Kimberly L. Martin's Statement of Errors*, ECF 12 ("*Statement of Errors*"), and *Memorandum in Opposition*, ECF 17 ("*Commissioner's Response*").

**I.    Background**

Plaintiff Kimberly L. Martin protectively filed her application for benefits in March 2011, alleging that she has been disabled since September 10, 2010. *PAGEID* 169-70. The application was denied initially and upon reconsideration and plaintiff requested a *de novo* hearing before an administrative law judge. *PAGEID* 59-61, 66, 150-56, 158-64.

An administrative hearing was held on October 30, 2012, at which

plaintiff, represented by counsel, appeared and testified, as did George Coleman, who testified as a vocational expert. *PAGEID* 85-123.

In a decision dated June 28, 2013, the administrative law judge concluded that plaintiff was not disabled from March 31, 2011, through the date of the administrative decision. *PAGEID* 80.

Plaintiff was 46 years of age at the time of the administrative law judge's decision. *PAGEID* 80, 169. Plaintiff was last insured for disability insurance purposes on March 31, 2011. *PAGEID* 70. Plaintiff has at least a high school education, is able to communicate in English, and has past relevant work as a bar manager, bartender, short order cook, construction laborer, grocery cashier, and waitress. *PAGEID* 78. She has not engaged in substantial gainful activity since September 12, 2010, the alleged onset date. *PAGEID* 72.

## II. Evidence of Record[1]

Plaintiff presented to the emergency department at Genesis-Bethesda Hospital on July 26, 2008, with complaints of neck pain after a fall several days earlier. *PAGEID* 436-37. She was diagnosed with cervical spine strain and cervical radiculopathy. *PAGEID* 439.

Plaintiff treated with Ronald Kalchik, D.O., and Philip W. Kocoloski, D.O., in 2009 and 2010 for various complaints, including neck pain and pain in her upper extremities and right elbow. *PAGEID* 274-76, 533-41, 543-46. Trigger point injections were administered, although without effect, and a TENS unit was prescribed. *PAGEID* 271, 380-81. *PAGEID* 380-81. An April 2010 MRI of the spine revealed

---

[1] The Court's discussion of the evidence is limited to the issues presented in plaintiff's *Statement of Errors*.

2

maintained vertebral body heights and disc interspaces, alignment within normal limits, and no evidence of significant disc bulge or herniation, neural foraminal narrowing, or central canal stenosis. *PAGEID* 278.

David Stainbrook, D.O, a rheumatologist, consultatively evaluated plaintiff on September 22, 2010 upon referral of Dr. Kalchik. *PAGEID* 300-01. Dr. Stainbrook diagnosed a variety of conditions, including severe back, neck, and elbow pain; positive rheumatoid factor; lumbar muscular pain; degenerative disc disease/osteoarthritis of the cervical spine; paresthesias of the hands; "[c]linical carpal tunnel syndrome"; and diffuse arthralgias and myalgias consistent with fibromyalgia syndrome. *PAGEID* 310. In a December 2010 follow-up, Dr. Stainbrook noted that an EMG/nerve conduction study was normal as were X-rays of plaintiff's elbows and hands. *PAGEID* 307. X-rays of her thoracic spine showed small osteophytes aneteriorly and laterally at several thoracic interspaces. *Id*.

Michael B. Shannon, M.D., examined plaintiff on May 21, 2012 for complaints of neck and right upper extremity pain over the prior year. *PAGEID* 405, 410-11. Dr. Shannon diagnosed cervical spinal stenosis at C5-6 with mild cord effacement and right myeloradiculopathy. *PAGEID* 410. On May 30, 2012, Dr. Shannon performed an anterior cervical discectomy, fusion, and plating. *PAGEID* 406-09, 411. At a follow-up examination on June 18, 2012, Dr. Shannon reported that plaintiff was doing well, had no arm pain, but did have some stiffness and soreness in her neck. *PAGEID* 404. Dr. Shannon recommended Aleve. *Id*. On

3

August 28, 2012, plaintiff presented for follow-up and complained of increasing neck pain across her shoulders and between her shoulder blades. *PAGEID* 403. Dr. Shannon found good strength and reflexes in the upper and lower extremities, but with tenderness in the posterior cervical region. *Id*. On October 9, 2012, Dr. Shannon commented that plaintiff "is doing pretty well with just intermittent pain, into her left arm that is aggravated by activities such as turning her head and flexing forward. Other than that, she is doing well." *PAGEID* 603.

In a letter to plaintiff's counsel dated October 10, 2013, Dr. Shannon opined that plaintiff "is totally disabled for allowed conditions of her claim;" "it is likely that the cervical disc pathology for which she underwent surgery in 2012 was likely present and of sufficient severity to be disabling on or before the 3/31/11 date upon which Ms. Martin last satisfied the earnings requirements to benefits." *PAGEID* 737.

**III. Administrative Hearing and Decision**

Plaintiff testified at the administrative hearing that she last stopped working as a manger and bartender at her husband's bar in September 2010 because she could no longer grasp and lift things and because of severe neck, hip and leg pain with standing. *PAGEID* 93-95. She gets dizzy and sometimes blacked out when she put her head back. *PAGEID* 96, 100-01, 115. Her daughter helps her with her house work and personal needs. *PAGEID* 97, 110.

Her back begins to hurt if she sits too long. *PAGEID* 97. She takes pain medication and uses a heating pad for her back pain. *Id*.

She has difficulty sleeping at night because she tosses and turns, trying to get comfortable. *PAGEID* 111. She experiences "massive headaches" since her surgery. *PAGEID* 97-98. Although surgery alleviated the numbness and tingling in her right arm, she now has difficulty grasping things with her left arm. *PAGEID* 98-99.

She sometimes wears a back brace, but no longer wears a cervical collar. *PAGEID* 99.

Plaintiff also testified that she is depressed and had attempted suicide. *PAGEID* 102-03. She sees a counselor twice a month. *PAGEID* 104. One side effect of her many medications is dizziness or drowsiness, which limits her ability to drive. *PAGEID* 105-06.

On a typical day, plaintiff takes her medication and sits or lies down with a heating pad. *Id*. She is not involved in any social groups or clubs, does not attend church, and does not visit her husband at the bar. *PAGEID* 101. Spending time with her grandson lifts her spirits. *PAGEID* 110.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity ("RFC") eventually found by the administrative law judge. *PAGEID* 116. According to the vocational expert, such an individual could not perform plaintiff's past relevant work, but could perform such sedentary jobs as address clerk, table worker, and parimutuel-ticket checker. *PAGEID* 113-14, 117.

In a written opinion dated June 28, 2013, the administrative law judge found that plaintiff's severe impairments consist of

5

fibromyalgia; lumbar and cervical degenerative disc disease; and depression.  *PAGEID* 72.  The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the RFC to

> lift and carry a maximum of 10 pounds.  She can sit, stand, and walk for 2 hours at a time for a total of 6 hours each in an 8-hour day.  She can occasionally stoop, squat, climb stairs, and reach at shoulder level, but she can never perform overhead reaching.  She should avoid all exposure to temperature extremes.  Due to her depression, she is limited to simple, routine tasks with superficial contact with others.

*PAGEID* 75.  Although this RFC precludes the performance of plaintiff's past relevant work, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such representative jobs as an address clerk, table worker, and ticket checker.  *PAGEID* 78-79.  Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from March 31, 2011, through the date of the administrative decision.  *PAGEID* 80.

**IV.  Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is more than a scintilla of

6

evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In her *Statement of Errors*, plaintiff first argues that the administrative law judge improperly relied on his own lay opinions in determining that she was not disabled. *Statement of Errors*, pp. 4-6. She specifically argues that the administrative law judge "used his lay opinion to erroneously determine that the Plaintiff's carpal tunnel syndrome was not diagnosed during the relevant period [by March 31, 2011.]" *Id.* at 4. Plaintiff points out that Dr. Stainbrook diagnosed carpal tunnel syndrome in 2010, and argues that the evidence of record, including references to tendinitis in plaintiff's wrists/hands and positive Tinel's sign, supports this diagnosis. *Id*.

7

Plaintiff's arguments in this regard are not well-taken.

The administrative law judge found that plaintiff had not been diagnosed with carpal tunnel syndrome prior to the lapse of her insured status in March 2011. *PAGEID* 73. Any error in this regard, however, is harmless considering the medical record and the RFC found by the administrative law judge. Dr. Sandbrook had the impression of "[c]linical carpal tunnel syndrome" at his September 22, 2010, consultative examination; however, he actually recommended additional testing to "rule out" that condition. *PAGEID* 310. That testing was in fact normal. *PAGEID* 307. State agency physicians reviewing the record later noted that plaintiff's carpal tunnel syndrome was "non severe." *PAGEID* 129-30, 140-41. The record also undermines plaintiff's credibility regarding the severity of this condition. *See PAGEID* 131 ("[D]espite her reports of UE [upper extremity] numbness, 10/2010 EMG and NCS were normal. Clt [plaintiff] was able to complete all of her own paperwork and ADLs [activities of daily living] are intact for hand function."). Moreover, the administrative law judge's RFC provided, *inter alia*, that plaintiff could "lift and carry a maximum of 10 pounds[,]" but that "she can never perform overhead reaching." *PAGEID* 75. The record does not support additional restrictions resulting from her "non severe" carpal tunnel syndrome and plaintiff does not specify any limitations caused by this condition that were omitted from the RFC found by the administrative law judge. Based on this record, the Court concludes that any error in finding that plaintiff had not been diagnosed with carpal tunnel

8

syndrome during the relevant period was harmless.  It is clear that consideration of this condition would not have changed the outcome of the proceedings.  *Cf. Richardson v. Colvin*, No. 3:14-cv-01505, 2015 U.S. Dist. LEXIS 82566, at *29-30 (M.D. Tenn. June 25, 2005) (finding that the administrative law judge did not err in his consideration of the plaintiff's "mild" carpal tunnel syndrome where, *inter alia*, the RFC included limitations on the plaintiff's ability to lift and/or carry twenty pounds occasionally and ten pounds frequently and "Plaintiff does not allege any additional restrictions or limitations resulting from her left carpal tunnel syndrome, and the record reflects that no medical source opined any specific limitations or restrictions due to her left carpal tunnel syndrome"), *adopted by Richardson v. SSA*, No. 3:14-1505, 2015 U.S. Dist. LEXIS 92541 (M.D. Tenn. July 16, 2015); *Porter v. Colvin*, No. 3:13-080, 2014 U.S. Dist. LEXIS 172444, at *10 (E.D. Ky. Oct. 29, 2014) ("Plaintiff's mere diagnosis of carpal tunnel syndrome, alone, does not automatically establish additional work-related limitations."), *adopted by Porter v. Colvin*, No. 2013-80, 2014 U.S. Dist. LEXIS 171522 (E.D. Ky. Dec. 10, 2014).  Accordingly, to the extent that the administrative law judge erred in this regard, that error was harmless and will not serve as a basis for reversal or remand.

Plaintiff next argues that the administrative law judge "erred by using his lay opinion to contradict the evidence of the record and the opinions of the State Agency medical consultants in determining that the Plaintiff's degenerative disc disease of the cervical spine was

not a severe impairment." *Statement of Errors*, p. 5. This argument is not well-taken.

The mere fact that a medical condition has been diagnosed says little of the severity of the condition. *See Lee v. Comm'r of Soc. Sec.*, No. 12-6226, 529 F. App'x 706, at *713 (6th Cir. July 9, 2013) ("But not every diagnosable impairment is necessarily disabling."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition.") (citing *Foster v. Brown*, 853 F.2d 483, 489 (6th Cir. 1988)). Moreover, the administrative law judge's finding of a severe impairment is a threshold determination; the finding does not require a conclusion of disability but merely requires the continuation of the sequential analysis. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In this case, the administrative law judge found that plaintiff suffers from severe impairments, including fibromyalgia, degenerative disc disease of the lumbar and thoracic spine, and depression. *PAGEID* 72. The fact that the administrative law judge did not include additional severe impairments is "legally irrelevant," *see McGlothin v. Comm'r of Soc. Sec.*, No. 07-4355, 299 F. App'x 516, at *522 (6th Cir. Oct. 31, 2008), so long as the administrative law judge continued the sequential analysis and considered plaintiff's severe and non-severe impairments in determining plaintiff's RFC. *See id.*; *Anthony v. Astrue*, No. 07-3344, 266 F. App'x 451, at *457 (6th Cir. Feb. 22, 2008); *Cole v. Colvin*, No. 0:13-cv-101, 2014 U.S. Dist. LEXIS 68744, at *14-15 (E.D. Ky. May

20, 2014).

In the case presently before the Court, the administrative law judge did in fact continue the sequential analysis and considered plaintiff's impairments, including her degenerative disc disease, in determining her RFC. *PAGEID* 75-77. The Court therefore finds no error in this regard.

Plaintiff also argues that, although the administrative law judge recognized that plaintiff's fibromyalgia was a severe impairment, his RFC determination "failed to include appropriate accommodations for frequent pain, fatigue, or loss of concentration due to pain and medication." *Statement of Errors*, p. 6. Plaintiff also argues that the administrative law judge "failed to consider the subjective nature of fibromyalgia" and that, by focusing on purely objective evidence, failed to discuss or consider "'the lengthy and frequent course of medical treatment or the nature and extent of that treatment, the numerous medications [Plaintiff] has been prescribed, the reasons for which they were prescribed, or the side effects [Plaintiff] testified she experiences from those medications.'" *Id*. at 7 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007)). These arguments are not well-taken.

It is true that "unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 243 (finding error where the administrative law judge exhibited a "hesitancy" to identify the fibromyalgia as a severe impairment). However, "a *diagnosis* of

11

fibromyalgia does not automatically entitle [a claimant] to disability benefits[.]"  *Vance v. Comm'r of Soc. Sec.*, No. 07-5793, 260 F. App'x 801, at *806 (6th Cir. Jan. 15, 2008) (emphasis in original) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).  "This places a premium, therefore, in such [fibromyalgia] cases on the assessment of the claimant's credibility."  *Swain v. Comm'r of Soc. Sec.*, 297 F.Supp.2d 986, 990 (N.D. Ohio 2003).  An administrative law judge, after assessing a claimant's credibility, must determine "if the claimant's pain is so severe as to impose limitations rendering her disabled."  *Id*.

In the case presently before the Court, the administrative law judge considered the fact that new symptomatology arose after the lapse of plaintiff's insured status, that plaintiff continued to work in 2010 between four and twelve hours a day at her family's bar, lifting fifty pounds or more and performed other physical tasks, that her recreational activities as of June 2011 included swimming, camping, coaching at the pool, playing billiards, and interacting with her young grandson and family.  *PAGEID* 76-77.  The administrative law judge properly concluded that these activities undermined plaintiff's subjective claims of pain.  *See Marchlewicz-Debats v. Shalala*, No. 93-1124, 1994 U.S. App. LEXIS 9368, at *20 (6th Cir. Mar. 29, 1994) (citing *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988) (*per curiam*)).  The administrative law judge's credibility determination enjoys substantial support in the record and is therefore entitled to great weight and deference.  *See Warner v.*

12

*Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).  For these reasons, the Court finds no error in the administrative law judge's evaluation of plaintiff's fibromyalgia.

Finally, plaintiff challenges the administrative law judge's credibility determination as a whole as it relates to her other conditions.  *Id*. at 6-7.  A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability.  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).  *See also* 42 U.S.C. § 423(d)(5)(A).  In evaluating subjective complaints, it must be determined whether there is objective medical evidence of an underlying medical condition.  *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994).  If so, then the evaluator must determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint.  *Id.*; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

The administrative law judge's credibility determination is accorded great weight and deference because of the administrative law judge's unique opportunity to observe a witness's demeanor while testifying.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)).  However, credibility determinations must be clearly explained.  *See Auer v.*

13

*Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).  If the administrative law judge's credibility findings are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations.  *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

In the case presently before the Court, the administrative law judge summarized plaintiff's subjective complaints and her testimony at the administrative hearing, but found that "the information provided by the claimant generally may not be entirely reliable" and that the record reflected "the claimant's exaggeration of complaints." *PAGEID* 75-77.  The administrative law judge evaluated the medical evidence, articulated the proper standard for evaluating a claimant's credibility, and concluded her evaluation of plaintiff's credibility assessment as follows:

> The claimant alleges that as of September 12, 2010, she was incapable of performing basic work activities due to extreme neck and shoulder pain, back pain, fibromyalgia, and depression.  Particularly, she alleged that her cervical spine impairment caused numbness and radiating pain in her shoulders and arms, especially her right arm, and that overhead reaching caused her to black out (Hearing testimony).  She alleged that she could not perform most household chores due to pain, fatigue, and upper extremity weakness, and that she spent much of the day lying down due to constant pain and nausea (Exhibit 4E).  However, after careful consideration of the evidence, the undersigned finds that claimant does have an underlying medically determinable impairment that could cause some symptomatology.  However, the pivotal question is not whether such symptoms exist, but whether those symptoms occur with such frequency, duration or severity as to reduce the claimant's residual functional capacity as set forth above or to preclude all work activity on a

14

continuing and regular basis.  In this case, a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by the claimant.  The objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in pain or other symptoms of such a severity of frequency as to preclude the range of work described above.  Rather, the factors set forth in 20 CFR 404.1529(c) and 416.929(c) support the residual functional capacity that has been found.

The record demonstrates that in January 2010, the claimant complained of neck, elbow, and generalized muscuskeletal aches and pains.  Upon examination she was noted to walk with a normal gait without assistive devices, she was alert and oriented, and in no acute distress.  However, her physician prescribed trigger point injections of the elbow and trapezius and lumbar muscles (Exhibit 1F).  An MRI performed in April 2010 was negative for any abnormal findings, and x-rays performed in September 2010 reported normal findings for her elbow, and only small osteophytes at several thoracic interspaces; no other abnormalities were noted (Exhibit 3F).  She was then referred for a rheumatology consultation in September and December 2010, and EMG/nerve conduction studies of the upper extremities were normal, as were multiple other laboratory studies.  However, the claimant had a positive rheumatoid factor (Exhibit 4F/2).  She was diagnosed with fibromyalgia and was prescribed pain management follow-up (Id., at 3).

Additionally, a 2008 MRI of her cervical spine indicated only "mild" degenerative disc disease at C3-4 and C5-6 with "mild" focal protrusion of disc material at these levels plus C4-5 (Exhibit 16F/52, and a 2010 x-ray of her thoracic spine indicated only "slight spondylosis" (Exhibit 5F).  A treatment note dated May 21, 2012 reported that the claimant had experienced pain in her neck for one year, but that *within the past 6 months* had developed pain radiating into her right arm with numbness and tingling (Exhibit 11F/9).  The new symptomatology occurred after the claimant's date last insured, and although she later underwent neck surgery, prior to 2012 there was no evidence of a need for the surgery prior to the date last insured.

In fact, in 2010, the claimant reported to her physician that she continued to work at the bar that her husband owned, and that in addition to handling the business side

15

of the establishment, she also worked regular shifts behind the bar and took on "a considerable amount of the responsibility for this establishment as her husband had a full time job of his own" (Exhibit 3F/3).  The claimant reported this work in Exhibit 5E, and reported that she frequently lifted 50 pounds or more, and carried cases of beer approximately 100 feet (Id.).  Additionally, she described stooping, standing, walking, kneeling, crouching, crawling, handling and grasping big objects, and reaching for objects between four and twelve hours per day(Id.).  This evidence is inconsistent with her allegations that she was incapacitated by back, neck, and arm pain prior to her date last insured.

Moreover, June 2011 progress notes from the claimant's family medical center indicate that the claimant was swimming in the pool, which helped her neck pain, that she had gone camping, and that she was coaching at the pool (Exhibit 19F/3).  Again, this level of activity suggests that the claimant was capable of a wider range of abilities than she has alleged.

With regard to her depression, the claimant reported to caregivers that she had been depressed for many years, although the records suggest that she only began to receive treatment in May 2011 – after the date last insured of March 31, 2011 (Exhibit 7F).  A 2008 treatment note from her primary care physician's office documents that the claimant was prescribed Zoloft and Xanax, although it does not document a diagnosis of depression or other mental health impairment until June 2010, at which time the doctor also noted "Going to file for disability" (Exhibit 6F/20, 7).  During a mental health counseling session in May 2011 (after her date last insured), the social worker noted that claimant "stated she is playing pool every week" and that "the Wellbutrin has been effective which pleases her" (Ex 7F/2).  Thus, although it would appear that the claimant has some depression symptomatology, her symptoms appear to be less intense or persistent than she has alleged, particularly during the relevant time period.

Overall there is a paucity of objective medical evidence in the record to support the claimant's subjective allegations for the time period between the alleged onset date and the date last insured.  She continued to work at her family's bar, interact with her young grandson, husband, and daughter, go camping, play billiards, swim, and coach.  Although the inconsistent information provided by the claimant may not be the result of a conscious intention to

> mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.
>
> \*\*\*
>
> In summary, considering the criteria enumerated in the Regulations, Rulings and case law for evaluating the claimant's subjective complaints, the claimant's testimony was not persuasive to establish an inability to perform the range of work assessed herein.  The location, duration, frequency, and intensity of the claimant's alleged symptoms, as well as precipitating and aggravating factors, are adequately addressed and accommodated in the above residual functional capacity.  The lack of support for the claimant's subjective complaints and functional limitations is not due to any unexplained mental impairment but to the claimant's exaggeration of complaints.

*PAGEID* 75-77 (emphasis in the original).  The administrative law judge noted and followed the appropriate standards, performed an appropriate evaluation of the evidence, and clearly articulated the bases of her credibility determination.  It was not improper for the administrative law judge to evaluate the objective medical evidence or plaintiff's activities of daily living in evaluating plaintiff's credibility.  *See* SSR 96-7, 1996 WL 374186 (July 2, 1996).  The analysis and credibility determination of the administrative law judge enjoy substantial support in the record.  This Court will not – and indeed may not – revisit that credibility determination.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

    Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be

17

**DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to

preserve an issue for appeal . . . .") (citation omitted)).

August 18, 2015                             *s/Norah McCann King*
                                           Norah M<sup>c</sup>Cann King
                                      United States Magistrate Judge