IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **KIMBERLY L. MARTIN,** | : | Case No. 2:14-CV-2731 |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | Magistrate Judge King |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before the Court on Plaintiff's Objection (Doc. 19) to the Magistrate Judge's August 18, 2015 **Report and Recommendation** (Doc. 18), recommending that the Court overrule Plaintiff's Statement of Errors (Doc. 12) and enter judgment in favor of the Commissioner of Social Security ("Commissioner" or "Defendant"). Upon independent review by the Court, and for the reasons set forth below, Plaintiff's Objections are hereby **OVERRULED** and the Court **ADOPTS** the Magistrate Judge's **Report and Recommendation**.

### I. FACTUAL BACKGROUND

Plaintiff filed her application for disability insurance benefits on March 30, 2011, alleging disability since September 12, 2010. Plaintiff's application was denied initially on June 9, 2011 (R. at 74) and upon reconsideration on October 17, 2011 (R. at 85). An administrative hearing before an Administrative Law Judge ("ALJ") was held on October 30, 2012 (R. at 27). The ALJ issued a decision on June 28, 2013 concluding that Plaintiff was not disabled within the meaning of the Social Security Act from the alleged onset date through March 31, 2011, the date last insured. (R. at 22). The Appeals Council denied Plaintiff's request for review on November

4, 2014 and adopted the ALJ's decision as the final decision of the Commissioner of Social Security. (R. at 1).

### A. Plaintiff's Medical Records[1]

Plaintiff made an emergency visit to Genesis-Bethesda Hospital on July, 26, 2008, complaining of neck pain as a result of a fall she suffered six days earlier. (R. at 373). Plaintiff was diagnosed primarily with cervical spine strain and additionally with cervical radiculopathy. (R. at 375).

Plaintiff saw Philip W. Kocolski, D.O., in late 2009 complaining of extreme pain in her neck and right elbow. (R. at 210). Dr. Kocolski recommended Plaintiff undergo trigger point injections of various muscles, and a right elbow injection. (R. at 211). Plaintiff underwent the procedures but the injections did not alleviate her pain. (R. at 217). Dr. Kocolski thereby advised Plaintiff to obtain an elbow support and prescribed a TENS unit, but noted that long-term benefit may come from the use of an anxiolytic or antidepressant. *Id.* An April, 2010 MRI of the lumbar spine showed that vertebral body heights and disc interspaces were maintained, alignment was within normal limits, and there was no evidence of significant disc bulge, herniation, or central canal stenosis. (R. at 214).

Plaintiff was also evaluated by Dr. David Stainbrook, a rheumatologist, on September 22, 2010, who was under the impression that Plaintiff had the following impairments: severe back, neck, and elbow pain; positive rheumatoid factor; lumbar muscular pain; degenerative disc disease/osteoarthiritis of the cervical spine; parestesias of the hands; clinical carpal tunnel syndrome; and diffuse arthralgias and myalgias consistent with fibromyalgia syndrome. (R. at 246). Dr. Stainbrook also recommended Plaintiff undergo further testing. *Id.* During a December

---

[1] The Court's discussion of the evidence is limited to the issues presented in Plaintiff's *Statement of Errors*.

16, 2010 follow up, Dr. Stainbrook reviewed an EMG/nerve conduction study of the upper extremities and determined it was normal. (R. at 243). X-rays of Plaintiff's hands and the right elbow were similarly normal. *Id.* X-rays of the thoracic spine showed small osteophytes anteriorly and laterally at several thoracic interspaces. *Id.*

Dr. Michael B. Shannon examined Plaintiff on May 21, 2012, for her persistent pain in the neck and shoulders and for numbness in her right arm. (R. at 341). Dr. Shannon reviewed Plaintiff's MRI results and concluded she had stenosis at C5-6 with mild cord effacement and recommended surgery. *Id.* On May 30, 2012, Dr. Shannon successfully performed an anterior cervical microdiscectomy, fusion, and plating at C5-6. (R. at 342). During a follow up examination on June 18, 2012, Dr. Shannon observed that Plaintiff was doing well post-op with some pain in her arm, but exhibiting good strength, reflexes, and sensation throughout, and that she has increased her activity. (R. at 340). Plaintiff did, however, exhibit some stiffness and soreness in the neck for which the doctor recommended ALEVE, an over-the-counter pain reliever. *Id.*

In her second follow-up appointment on August 28, 2012, Plaintiff expressed continued increasing neck pain across the shoulders and between the shoulder blades. (R. at 339). Dr. Shannon opined that Plaintiff's surgical incision was well healed and that she exhibited good strength and reflexes in her upper and lower extremities, but with tenderness in the posterior cervical region. *Id.* In an October 9, 2012 letter Dr. Shannon wrote that Plaintiff was doing "pretty well with just intermittent pain into her left arm that is aggravated by activities such as turning her head and flexing forward. Other than that, she is doing well." (R. at 539). Lastly, in a letter to Plaintiff's counsel dated October 10, 2013, Dr. Shannon opined that Plaintiff was totally disabled for allowed conditions of her claim and that it was "likely that the cervical disc

pathology for which she underwent surgery in 2012 was likely present and of sufficient severity to be disabling on or before the 3/31/11 date upon which Ms. Martin last satisfied the earnings requirements to benefits." (R. at 673).

### B. The ALJ's Decision

In his decision denying benefits, the ALJ conducted the required five-step sequential analysis for disabilities benefits claim. *See* 20 C.F.R. § 404.1520.[2] The ALJ found, at step one, that claimant did not engage in substantial gainful activity during the period from September 12, 2010, her alleged onset date, through March 31, 2011, her date last insured. (R. at 14). At step two, the ALJ determined that Plaintiff had the following severe impairments: fibromyalgia, degenerative disc disease of the lumbar and thoracic spine, and depression. *Id*. The ALJ did not

---

[2] The five sequential steps are as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled....
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled....
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled....
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled....
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled....

20 C.F.R. § 404.1520(a)(4).

include carpal tunnel syndrome among the list of severe impairments because it was not diagnosed during the period in question. (R. at 15). Despite these findings, at step three the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the disability standards of the Social Security Act. *Id*. The ALJ relied on the lack of treating or examining physicians' findings to support the severity requirements of any listed impairment. *Id*. The ALJ also determined that Plaintiff's mental impairments did not meet or medically equal the required criteria because she had no more than moderate restriction in activities of daily living, only moderate difficulties in social functioning, concentration, persistence, and pace, and she has not experienced episodes of decompensation of an extended duration. (R. at 16). The ALJ then concluded that Plaintiff had the residual functional capacity to:

> Sit, stand, and walk for 2 hours at a time for a total of 6 hours each in an 8-hour workday. She can occasionally stoop, squat, climb stairs, and reach at shoulder level, but she can never perform overhead reaching. She should avoid all exposure to temperature extremes. Due to her depression, she is limited to simple, routine tasks with superficial contact with others.

(R. at 17). The ALJ considered all objective medical evidence in the record and the extent to which the alleged symptoms are consistent with that evidence. *Id*. Although the record does not contain opinion evidence from any treating or examining sources, the ALJ gave great weight to the reports of the state agency medical consultant because they were consistent with the medical record. (R. at 19). The ALJ gave little weight to the state agency psychological consultants' assessments regarding Plaintiffs functional imitations arising from her mental impairments because the evidence demonstrates that Plaintiff had at least some limitations stemming from her depression. *Id*. The ALJ thereby concluded that there is insufficient "objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged" by Plaintiff.

(R. at 18). Therefore, the ALJ held that Plaintiff was capable of performing jobs identified by the vocational expert and that those jobs existed in significant numbers in the national economy. (R. at 20). In sum, the ALJ concluded that Plaintiff was not disabled and not entitled to benefits.

### C. The Magistrate Judge's Decision

In her Statement of Errors, Plaintiff argued that the ALJ's decision should be reversed because: (1) the ALJ improperly relied on his own lay opinions in determining that Plaintiff's impairments were not severe and that she was not disabled; and (2) the ALJ did not include limitations related to Plaintiff's fibromyalgia in his RFC determination. (Doc. 19 at 2-4). The Magistrate Judge reviewed the record and concluded that the ALJ's determination that Plaintiff had not been diagnosed with carpal tunnel syndrome prior to the lapse of her insured status was harmless error in light of the medical record and the RFC finding by the ALJ (Doc. 18 at 8). Furthermore, the Magistrate Judge found that the ALJ did not use his lay opinion to contradict the medical record because a diagnosis of a medical condition does not speak to the severity of the condition, and the ALJ's finding of a severe impairment is a threshold determination that does not require a conclusion of a disability. (Doc. 18 at 10). Lastly, the Magistrate Judge found that the ALJ properly concluded that Plaintiff's activities undermined her subjective claims of pain and that the ALJ's subsequent credibility determination used to determine disability is entitled to great deference. (Doc. 18 at 12).

### II. PROCEDURAL POSTURE

Plaintiff filed her Statement of Specific Errors (Doc. 12) on April 20, 2015. Defendant provided a Memorandum in Opposition (Doc. 17) on July 27, 2015. The Magistrate Judge issued a Report and Recommendation (Doc. 18) on August 19, 2015, and Plaintiff filed her Objections

6

to the Magistrate's Report and Recommendation (Doc. 19) on September 8, 2015. The Commissioner filed no response.

### III. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1), this Court, upon objection to a Report and Recommendation, is required to make a *de novo* review of those recommendations to which objection is made. *See also* Fed. R. Civ. P. 72(b). This *de novo* review, in turn, requires the Court to re-examine all the relevant evidence, previously reviewed by the Magistrate Judge, to determine whether the findings of the Commissioner are supported by "substantial evidence." *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1053 (6th Cir. 1983); *Gibson v. Secretary of Health, Education and Welfare,* 678 F.2d 653, 654 (6th Cir. 1982). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice within which the decision-makers can go either way, without inference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted).

The findings of the Commissioner and proceedings on a claimant's application for social security disability benefits are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter, Commissioner of Social*

*Security*, 246 F.3d 762, 772 (6th Cir. 2001). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

Additionally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (internal quotation omitted).

## IV.   ANALYSIS

Plaintiff challenges the Magistrate Judge's Recommendation on two grounds, arguing that: (1) the ALJ improperly relied on his own lay opinions in determining that Plaintiff's impairments were not severe and that she was not disabled; and that (2) the ALJ did not include limitations related to Plaintiff's fibromyalgia in his RFC determination.

### A. ALJ's Reliance on Lay Opinions

Plaintiff first asserts that the ALJ improperly relied on his own lay opinions to determine Plaintiff's carpal tunnel syndrome was not diagnosed during the relevant period (prior to March 31, 2011). This court disagrees and finds that the ALJ's determination is supported by substantial evidence in the record. Substantial evidence is "less than a preponderance, but more than a

8

scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Harris v. Comm'r of Soc. Sec.*, 598 Fed. Appx. 355, 360 (6th Cir. 2015) (quoting *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014)).

Carpal tunnel syndrome was first addressed in this case by Dr. Stainbrook in his consultative examination of Plaintiff dated September 22, 2010. (R. at 245). However, Dr. Stainbrook never affirmatively concluded Plaintiff suffered from carpel tunnel syndrome. Rather, his examination gave him only an "impression" of the syndrome for which he recommended Plaintiff undergoes further EMG and nerve testing to "rule out" the syndrome. (R. at 246). The December 16, 2010 review of the recommended EMG and nerve test results showed normal function of the upper extremities. (R. at 243). Furthermore, there is additional conflicting evidence in the record regarding the alleged syndrome. The evidence in the record would allow a reasonable mind to conclude Plaintiff was not "diagnosed" with carpal tunnel syndrome during the relevant period. Therefore, the ALJ's similar determination is supported by substantial evidence in the record and not, as Plaintiff asserts, solely by the ALJ's lay opinion. Furthermore, where a conclusion is supported by substantial evidence, as it is here, it must be affirmed, even if the court as a trier of fact would have arrived at a different conclusion. *Elkins*, 658 F.2d at 439.

Plaintiff also objects to the magistrate's finding that the ALJ did not err in determining some of Plaintiff's impairments were not severe. We disagree. Although Plaintiff does not specify which findings of non-severity she takes issue with, her Objections refers to her Statement of Errors in which she contests the ALJ's determination that "Plaintiff's degenerative disc disease of the cervical spine was not a severe impairment." (Doc. 16 at 3). As the magistrate judge correctly identified, an ALJ's finding that some impairments are non-severe is "legally irrelevant," when others are found to be severe. *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx.

181, 190 (6th Circ. 2009). All that is required of the ALJ upon finding a single severe impairment is to continue with the remaining steps in the disability evaluation. *Maziarz v. Sec'y. of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In the present case, the ALJ found Plaintiff suffered from the severe impairments of fibromyalgia, degenerative disc disease of the lumbar and thoracic spines, and depression and continued with the remaining steps accordingly. (R. at 14).  Plaintiff is correct in her articulation of 20 C.F.R. § 404.1546(c) which requires an ALJ to consider the combined effect of all of Plaintiff's impairments, both severe and non-severe in assessing her residual functional capacity. In the present case, this analysis would require a discussion of the disc disease of the cervical spine, which the ALJ did not find to be severe. Any objection by Plaintiff in this regard is meritless because the ALJ specifically addressed the degenerative disc disease of the cervical spine in his RFC determination:

> Additionally, a 2008 MRI of her cervical spine indicated only "mild" degenerative disc disease at C3-4 and C5-6 with "mild" focal protrusion of disc material at these levels plus C4-5 (Exhibit 16F/52, and a 2010 x-ray of her thoracic spine indicated only "slight spondylosis" (Exhibit 5F).

(R. at 18). Plaintiff's assertion that the ALJ "clearly used his lay opinion" is simply false. Furthermore, Plaintiff does not direct our attention to, and this court cannot find, any evidence to indicate that the ALJ's decision was not supported by substantial evidence in the record. Lastly, Plaintiff's assertion that the ALJ used his lay opinion to "contradict the opinions of the [s]tate agency medical consultants" is peculiar. Not only did the ALJ give the state agency consultants' opinions "significant weight" but he imposed greater restrictions regarding Plaintiff's lifting and carrying because the "evidence justifie[d]" doing so[3]. (R. at 19).

---

[3] Whereas the state agency medical consultants limited Plaintiff's lifting and carrying 10 pounds frequently and 20 pounds occasionally, the ALJ restricted both to 10 pounds only.

10

**B. ALJ's Credibility Determination**

Finally, Plaintiff objects to the Magistrate Judge's finding that the ALJ did not err in his decision not to include limitations related to Plaintiff's fibromyalgia in his RFC determination. This court again agrees with the magistrate.

Plaintiff argues that the ALJ's RFC determination does not adequately reflect the limitations imposed by the severe impairments found by the ALJ, specifically as they relate to fibromyalgia. However, the mere diagnosis of fibromyalgia does not automatically entitle a claimant to disability benefits. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008). "Disability claims related to fibromyalgia are related to the *symptoms* associated with the condition—including complaints of pain, stiffness, fatigue, and inability to concentrate—rather than the underlying condition itself." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 860 (6th Cir. 2011)(emphasis in original). *See also* 20 C.F.R. § 404.1529.

To evaluate the claimant's complaints of disabling pain, the court conducts a two part analysis: First, the adjudicator considers whether there is an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms; second, if there is an impairment that could reasonably cause the symptoms, then the adjudicator evaluates the intensity, persistence, and limiting effects of the symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work. *Kalmbach*, 409 Fed. App'x at 863. Among the factors the ALJ may consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; the claimant's testimony and other relevant evidence in the record. *Id.*

Furthermore, due to the often insufficient objective medical evidence to determine the severity of fibromyalgia, credibility evaluations become a "particularly relevant issue." *Walters*

11

*v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The ALJ's credibility determination must contain specific reasons for the finding, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. *SSR 96-7p*. The ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference. *Lafferty v. Apfel*, 1998 U.S. App. LEXIS 31389, at *13 (6th Cir. Dec. 10, 1998). *See also* Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001). Lastly, if the ALJ's findings are explained and find support in the record, the ALJ's credibility determination cannot be disturbed absent compelling reason. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). We find that no such reason exists here.

In the present case, the ALJ's RFC determination demonstrates both that the ALJ was aware of the required two-prong analysis, and that he did in fact conduct it:

> However, after careful consideration of the evidence, the undersigned finds that claimant does have an underlying medically determinable impairment that could cause some symptomatology. However, the pivotal question is not whether such symptoms exist, but whether these symptoms occur with such frequency, duration or severity as to reduce the claimant's residual functional capacity as set forth above or to preclude all work activity on a continuing and regular basis.

(R. at 17-18). The ALJ evaluated the record to determine the evidence was insufficient to substantiate the severity and degree of pain alleged by Plaintiff. (R. at 19). The ALJ's RFC determination relied in part on objective medical evidence, which typically cannot confirm the existence of fibromyalgia or the extent of its severity. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). However, the ALJ also considered Plaintiffs activities of daily living which shows Plaintiff engaged in swimming, camping, and working at her husband's bar which

required frequent lifting of fifty pounds or more and constant kneeling, crouching, stooping, reaching, and walking for four to twelve hours per day. (R. at 18). Plaintiff's activities contradict her testimony regarding the severity and limiting effects of the condition, stating she was incapable of performing most household chores due to pain, fatigue, and upper extremity weakness, and that she spent much of her day lying down. (R. at 144-148). *See* Walters 127 F.3d, 532 (finding that the ALJ "acted properly" by considering claimant's activities of daily living which contradicted his testimony). *See also* Bailey v. Secretary of HHS, 1991 U.S.App.LEXIS 179, at *12 (6th Cir. Jan. 3, 1991) (arguing the ALJ was justified in considering Plaintiff's daily living activities). The ALJ also acknowledged that the contradictions in the record may not be a "conscious intention to mislead" but its inconsistencies nevertheless demonstrate the information provided by Plaintiff may not be "entirely reliable." (R. at 19). The ALJ's credibility determination was not, as Plaintiff contends, a blanket assertion but rather supported by evidence in the record. Furthermore, the ALJ's three page RFC determination contains specific reasons for his findings, which are both supported by evidence in the record and sufficiently specific to be clear to subsequent reviewers. Because the ALJ's determination finds support in the evidence, it is entitled to deference and this court cannot, and will not, substitute its judgment for that of the ALJ.

## V. CONCLUSION

For the reasons listed here and in the Magistrate Judge's Report and Recommendation, Plaintiff's Objections are hereby **OVERRULED.** The Court adopts the Magistrate Judge's **Report and Recommendation**. The case is hereby **DISMISSED.**

**IT IS SO ORDERED**.

                                                 **/s/ Algenon L. Marbley**
                                                 **ALGENON L. MARBLEY**
                                                 **UNITED STATES DISTRICT JUDGE**

**DATED: March 16, 2016**